Good morning, Your Honors. If it pleases the Court, John Messina for Appellant Merlin Aboulhosn. This case, I believe, is very unique for a Family Medical Leave Act case. Outgoing Chief Judge Zalis Kaczynski sat at a lecture at the State of the Circuit for the Federal Bar Association of the Inland Empire and said, look not just at the legal question, but consider the human component of every dispute, including the uniqueness, background, and perspective of each individual involved. Is that supposed to carry weight with us? Your Honor, the thing is, in this case, there's so much human component to it, balanced with the law, that it's just a very unusual case because in this case... I want to just be sure I understand what you're saying. Are you saying you want us to ignore the law and just go with the human component? Absolutely not, Your Honor. I'm saying... We have to follow the law, right? I understand that, Your Honor. I'm just saying there's a human component to the cases and the way they were decided. We look at a human component in Marshak, which is the case that we rely on, and in Sims, and there's differences, there's vast differences in the facts of those cases. Well, I appreciate that. I appreciate you're going with the human element, and I appreciate that. But I think you need to get to the law then because I don't think we're necessarily going to go with human. We've got to find some law. And so I guess my first idea is in order to establish this prima facie case that you had to establish, what did you need to show? Well, we needed to show that the medical certification, remember, Mr. Alvahosen was terminated. Well, just a minute. Aren't there five things you have to show in order to establish that you can have some protection under FMLA? Yes, Your Honor, and I believe those were met under the medical certification. I understand you think they were met, but I guess I'm now looking at the issues that you now raise. My worry is that the district court said, okay, I think there's a question of fact as to whether he really provided sufficient intent of his notice. I think we've got some questions of fact about that. And then the district court says, but nonetheless, given there's sufficient evidence or there's a question of fact of whether the notice was really done, whether they did it right, whether they don't, I think we've got to move to the other issues because you've got other issues that you have to win on. And so the district court said, was he entitled to the leave? Not talking about all those questions of fact. Just go to the absolute. Was he entitled to the leave? And you seem to object to that. Because what the court did was they, to establish that he was not entitled to the leave, stating that his father did not suffer from a serious health condition sufficient to justify leave under the Family Medical Leave Act, they looked at the medical certification, which was never looked at by Merrill Lynch, before terminating Mr. Albohausen. But it seems to me that if, in fact, you're going to win here, first you're not going to win on sufficient notice because the district court hasn't determined that yet. That's correct, Your Honor. So the next thing that you're going to look at, which is what the district court did, the district court went on and said, well, let's look at the other elements because there are five. Was he eligible for the protection? Yeah. Was the employer covered? Yes. Was he entitled to the leave? That's the third. And so the district court went right to that. Because whether he provided the sufficient notice was subject to some dispute. So now we have to determine whether he was entitled to the leave. And now you object to going there. Well. I didn't understand the objection because the honest truth is, if I look at Ragsdale v. Wolverine, the Supreme Court case, it says liable for compensation of benefits only lost by reason of a violation for monetary losses as a direct result. So I've got to find out, does he have leave at all? Can he get it if I'm going to go on and there's a question of fact? And so the court went there. The court went there and they found that he had at least three weeks left under the Family Medical Leave Act. And they said that there was a triable issue with respect to. But then the court said, but I don't think he's entitled to leave at all. Right. Because there's no medical condition that raises to the level, and not only that, there's nothing to suggest he had to be there. Right. And how did they get there? They got there by looking at the medical certification form, which they shouldn't have looked at. Because in this court said, in Marshak and in Sims, that once the employer has required a medical certification and they don't ask for a second one, they don't get to challenge whether or not the employee or his family member suffered from a serious medical condition. So they can't look at the condition itself and determine if it were sufficient to merit it? The. I mean, whatever the. There's a fight about whether there was a valid certification or whether there wasn't. Whether he put it in on time or whether he didn't. Whether he ignored all those good helpful hints by his fellow employees to get something done and he didn't get it done for whatever reason. Question of fact. So the bold ultimate is, was there a reason for the leave? Certification or not. Is there something there that says there's a reason for the leave? And if the court, even there and other courts have found, there's a triable issue. If there's a debate on whether or not the, on the medical certification or the reason for leave is insufficient or incomplete, there has to be further inquiry. There was never further inquiry in here because he was fired for not getting the medical certification in. They never considered it. It was only after the fact that they looked at the medical certification and said, oh, yeah, here's the reason. He wouldn't have been allowed to have leave anyway. I mean, it's like five-card poker and you get banned from the game after you've added up. But isn't your real problem, and I guess that's where my questioning is going, isn't your real problem that there's a question of fact as to whether he should have got the medical leave and there's a question of fact of whether he needed to be there. And for those reasons, it ought to go back to the district court. Rather than fighting about the district court making, using other reasons for making them. The ultimate decision had to be those, and all you're arguing is there's a question of fact, aren't you? Well, I'm saying that if there's going to be a decision on whether or not he was entitled to leave and whether or not his father suffered from a serious medical condition, it's not for the court to decide. It's a triable issue, and a jury should decide that. A jury should look at all of the facts and circumstances. You've got to remember, this medical certification form was filled out by a Lebanese doctor in Lebanon with Marwan Abelhosen translating and then writing down what he believed the doctor understood. We even have a declaration from Marwan Abelhosen that when it came to capacity, whether he be incapacitated or not, he thought, he said, well, I don't, was able to move and stuff. He didn't know that incapacity in the form of coronary artery disease, you're greatly incapacitated. If you don't watch yourself, you're going to, you know, that blockage is going to cause that, you know, either. That's not in the record. That's in the record. It's in the record what he had, but all the things you're now telling me about. Yeah, I'm just saying that the coronary artery disease. I mean, I appreciate you might be a good doctor, I don't know, but I'm just saying that's not in the record, and you're going on a little further than I can really know. Is there anything in the record that suggests that taking the medical condition as stated with that amplification, was there a need for your client to be there? Yes, Your Honor. The medical record said, the medical certification said that he needed 24-hour care, that he wasn't taking his medication, that he needed to get on a regime, that he needed to watch his drinking, that he needed to exercise, and that Abelhosen had to be there 24 hours. That says in the medical certification, and Marwan Abelhosen told his employer that, and unlike, you know, Marshak, where she just took off to the Philippines after her employer told her it wasn't going to be allowed, Marwan asked his employer, and he was going to take personal leave, and then they came back and said, no, don't take personal leave, take family medical leave. Does the certificate indicate that your client needed to be there 24 hours, or that someone needed to be there 24 hours? I remember the certification saying that he needed 24-hour care. It didn't say specifically that Marwan needed to be there. No one else could do it, it doesn't say. Somebody else, I think, but the Family Medical Leave Act doesn't. I'm not asking, I'm just saying. I don't believe the medical certification said that he specifically, the son, had to be there, no. Does the record indicate whether your son was there? Yes, it does. Yes, Marwan Abelhosen was. Sorry about that, I don't mean to attribute parenthood. Yes, Marwan, he was there, yes, absolutely. And he was taken care of, and he got some results. Where does the record show that his heart attack years before is related to this, or the heart problem from years before is related to high blood pressure? Because of the fact that he says that he suffered a heart attack in 2006, had bypass surgery, and that the mother stated to Abelhosen, to Marwan, that your father wasn't taking care of himself. He wasn't eating properly, he was drinking, he wasn't exercising, he wasn't taking his medication. He was seeing a cardiologist. The medical certification is from a cardiologist related to that heart condition. It doesn't say that. I don't recall if it says anything about it. I don't know if it says directly on the medical certification. If, again, that might be incomplete, it might be something void, further inquiry is required. Further inquiry was never made. What you're really arguing then is summary judgment is inappropriate. Absolutely, Your Honor. The standard review is de novo. I don't have any other questions. Unless you have something else you want to add, you can save the rest of your time for rebuttal if you want. Thank you, Your Honor.  Let's hear from the appellee. Good morning, Your Honor. Stina Huerta for appellee Merrill Lynch, Pierce, Fenner, and Smith. Glad I got that out. That's a great name, that last name particularly. Yes. The main point that was raised in the trial court and that appears to be raised here again is that you can usurp the MLA case by simply asserting that a certification wasn't received and relied upon prior to the adverse employment action. Respectfully, I don't believe that the appellant has cited any cases that actually state that. Say that again, what you're saying. I mean, it worries me. I know what the appellant has to prove. It seems to me that the district court has already said it's a question of fact at this point whether, in fact, there was compliance with the notice or not. Yes, Your Honor. And reserve that for something else. Yes, Your Honor. So it seems to me that as to that issue of fact, we can't determine it. We can't get there. We've got to send it back unless we can find some other way to do it. Yes, Your Honor. So it seems to me that what the district court did is they said, but you've also got to prove that you're entitled to the leave. And the district court said they're entitled to the leave because there's no serious health condition. I guess I'm figuring I'm having a tough time understanding why on this record there isn't a question of fact as to whether there's a serious health condition. Yes, Your Honor. The doctor was a cardiologist. The doctor said what they said about the problems that existed with the man. And then the doctor went off to say what it was the man needed for help in wherever he was, in the place that he was. So why isn't that enough to just meet the standard for denial of summary judgment? Why isn't that as much a question of fact as the other one? Yes, Your Honor. I believe it's because of the specificity of the regulation that we're talking about. The definition of serious health condition has several components which were addressed in the summary judgment papers by the district court. And that includes on one prong inpatient care, which there's no record of any inpatient care. Or on the other side, it can be a continuing care for an ongoing issue. But that issue has to result in the incapacity of the family member. And there's absolutely no record of incapacity. Well, but isn't that a question of fact? It's not because there's no facts in the record to dispute it. I understood that he had this problem. It was continuing. That he wasn't getting over it. That the reason he wasn't getting over it is because nobody was there to monitor him. That he needed to have medical control and 24 observation of his blood pressure and his general condition. He needed monitoring of his blood pressure to avoid the stress. He needed someone to give him the medicine because if there's nobody there to do it, this condition would not go away. The patient wasn't capable of taking the medication unless he was under supervision. The patient needed 24-hour monitoring to make sure he got his medicine when needed. I mean, I'm all saying that may be wrong. But on a question of fact, I'm having a tough time seeing why it's summary judgment. Yes, Your Honor, and I believe, again, it relates to the fact that this person was not incapacitated for purposes of the definitions in the FMLA. What definition would you refer me to so I can look again at it? Because I looked at the definitions, and I'm having a tough time understanding why this would not meet it. Okay, so the first definition that I'm looking at is under 29 CFR 825.113A. Okay. So that's the starting point. It's an illness, injury, impairment, or physical or medical condition. Okay, I looked at that. I'm trying to figure out why this wouldn't meet that. Because there has been no record of inpatient care. There's absolutely no record of that. Well, he had a heart attack. He had a heart attack in 2006. There's absolutely nothing that connects the dots between that event in 2006 and any condition that he may have had in 2010. Counsel, is your position that when you take the definitions and you take everything that the plaintiff's appellants are saying, that if you give them the entire benefit of a doubt, that they still don't meet the definition, and therefore there is no real trialable issue? In fact, because what they have raised is irrelevant to the legal question that has to be resolved. That's entirely correct, Your Honor. Looking at the certification, looking at the testimony, it's all undisputed, and there's no waiver here because we don't contend that this was an incomplete or insufficient certification. We believe what it says, and what it says on its face indicates that it does not meet those definitions. But doesn't it say that the duration of what the father's condition is is 6 to 12 months, that it requires medication, that it is high blood pressure, that it's a statement that the employee is needed for the relative care? Why doesn't that meet it? I'd like to further direct, Your Honor, to 29 CFR 825.113B, which defines incapacity as inability to work, attend school, or perform other regular daily activities due to the serious health condition, treatment, therefore, or recovery therefrom. And the record absolutely contradicts that any of those elements were met. Mr. Abelhosen's father walked to his doctor's appointments. He had no problems with any sort of hygienic or medical or other needs. Mr. Abelhosen merely was present during the time that Mr. Abelhosen's father self-administered his own medications. He was present during the time that he fed himself and occasionally accompanied his father to the doctor's office, but he testified that he was not needed to go to the doctor's office. He simply did. Again, it gets back to, at least as I understand your position,  giving the best possible interpretation and even saying that there's a failure of proof here to meet the requirements under this law. Yes, Your Honor. That's right. What do you do with these cases that we have? The Fifth Circuit case, Oswald v. Sara Lee. The Hayduck case, which is a Western District of Pennsylvania case. Those are two cases which say that high blood pressure could be considered a serious health condition because it involves continued treatment. That's out of the Oswald case. Then you've got the Hayduck case, which says finding a high blood pressure qualifies as a chronic health condition when plaintiff was diagnosed since at least 2001, visited his cardiologist, and took medications. What do I do with those cases? I think those cases can be distinguished. I think blood pressure can be a serious health condition, but the courts have been very clear that you can't just put a label on any one medical condition and hold that universally that will satisfy the serious health condition element in a particular case. So the court has the record that's before it. Secondly, another issue that the district court noted was that Mr. Albuhosen, by his own testimony, did not provide the sort of care that is covered by the FMLA, and that's another equally important reason why this case was dismissed. The FMLA, again, is specific in terms of what is covered when we talk about care, and it does not encompass simply, as Mr. Albuhosen testified, babysitting a family member. Well, I mean, I know that you can always say babysitting, and I often use that when I'm talking about what I have to do when some of my children or others, I'm just sitting there with them rather than doing it, and I provide the medicine at the appropriate time. But if I look at 29 CFR 825.124, it says that the family member has to encompass both physical and psychological care, and then it says it includes situations where, for example, because of a serious mental condition, the family member is unable to care for his own basic medical, hygienic, or nutritional needs or safety, he is unable to transport himself or herself. The term includes providing psychological comfort, reassurance, which would be beneficial to a parent with serious health condition who is receiving health care. Now, it seems to me that when I read what the doctor said, patient needs medical control, needs 24-hour observation, needs monitoring of the blood pressure and avoid stress, needs someone to give the medicine on a regular basis, then I'm saying isn't that at least a question of fact at that point? Your Honor, what was provided by the doctor is entirely bereft of references to psychological comfort or support. The statements in there are clinical in terms of observations of blood pressures and things of that nature. It doesn't indicate in the certification that the patient needed that type of assistance, and it doesn't state that that was Mr. Abelhosen's duty was to provide that type of comfort and support. We're talking about the monitoring of blood pressure. Let me ask you something. I'm sorry. Please. I don't see how if you look at ER 220, which is the actual certification, patient needs 24-hour monitoring to make sure he gets his medicine when needed. That's what the doctor said. How does that square with what you just said? Your Honor, I was looking at ER 219. Patient needs medical control and 24-hour observations of blood pressure and general condition, and that does go on as you referenced, Your Honor. So that doesn't square with what you just said. Well, Your Honor, I believe what the point I was trying to make is that the types of observations that were observation that's referenced here appears to me to be of a clinical nature in terms of monitoring, you know, him taking medicine and the blood pressure. It does not, to me, support that he was there to comfort and support the patient. I want to turn your attention to a slightly different issue. Let's just assume, arguendo for a moment, that we decide to send the issue of the certification and the like back to the district court on the basis that there was indeed a material issue of fact. You've got a promissory note here now. This is, of course, very common in the securities industry. Somebody somewhere else, Merrill Lynch or whomever, says, come on over here. We'll give you a big bunch of money, and you're going to pay it back over a period of time. For every year you're here, we're going to forgive a certain percentage of the note. I assume that's what this is. He now has been terminated, I believe. Is that correct? Yes, Your Honor. Okay. So if we were to take the action, I'm just arguendo, that I just mentioned, what happens to the note in the meantime? Your Honor, I don't believe that there would be any reason to reverse the district court's ruling on the note. It does not specify the grounds for termination or impose limitations on the grounds for termination. It simply states that it becomes due upon termination of employment. Okay. So let's just say, arguendo, that ultimately the district court were to conclude that Mr. Oppelhausen was improperly terminated because he, in fact, did not violate the F.L.A. What impact, if any, would that have on the issue of the note? Your Honor, I don't believe there should be any impact on it. I believe that the district court's ruling on the summary judgment should still stand. Okay. Because the note didn't have anything in there about it, and because he was an at-will employee. Yes, Your Honor. If he's an at-will employee, are there exceptions to termination of an at-will employee that might be applicable here? No, Your Honor, not in a contract setting. So if we're talking about This is an at-will employee with a contract, but aren't there some public policy considerations that one would look at if one were terminated as an at-will employee that he could then allege? To clarify. I mean, for instance, if you terminate an at-will employee because they violate the law, we would undo the termination. If you terminate an at-will employee because he performs a public duty that he should perform, we undo the termination. Why is this not a situation where the employee is taking advantage of a benefit the government gives him as he would if he were going to go sign up for disability or other things under the law? And what he's done here is he's trying to avail himself of that public benefit? Would that be something that an at-will employee could be terminated for? No, Your Honor, but this is an employee who doesn't have an employment contract. They have a promissory note that specifies that he's been paid. They do have an agreement, don't they? No, Your Honor, he's an at-will employee that has no contract and no restrictions on the employer to terminate his employment. The record is undisputed on that. There was a handbook which at some point was argued to be a contract, but it states on its face that it's not a contract. But it was my understanding, and of course you'll have to correct me if I'm wrong, that there are defenses in an at-will employee termination that don't have to come by contract. They come by public policy defenses. And I'm wondering if he doesn't qualify for one of those regardless. Well, such is the interference claim that he's asserting. So I think that that encompasses that portion of his claims. The portion of his claims that relate to contract were based on the idea that there was an implied in fact contract, despite the fact that he signed an at-will agreement, despite the fact the handbook said it was not a contract. So that is separate and apart, I believe, from this issue of FMLA. Okay. Sorry. That's okay. They did appeal the note issue, though, right, on the implied contract? Yes, Your Honor. Okay. And that is actually on the cross-complaint that was filed. Right. I'm sorry. Go ahead. No. Any other questions? Thank you very much, counsel. Thank you, Your Honor. You have some time if you want. You don't have to. We're not begging you to do it. We just want you to know you have this opportunity if you want to rebut. No, I don't. I'm very comfortable that you have a phone. I completely understand. Okay. Very good. Thank you. The case just argued is submitted.
judges: Lamberth, Smith, Smith